FILED
2016 May-27  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| KATHERINE ENIS a/k/a KAT ENIS, ) <br> an individual, ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CAVALRY PORTFOLIO ) <br> SERVICES, LLC,  a Corporation; ) <br> CAVALRY SPV I, LLC, a ) <br> corporation, ) <br> ) <br>    Defendants. ) | Civil Action No.: |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendants and states as follows:

1.     This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act  (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendants and their agents in its illegal efforts to collect a consumer debt from Plaintiff.

2.     Defendants sued the Plaintiff for a debt Plaintiff did not owe.

3.     The lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt Plaintiff did not owe.

4.   This is the pattern of collection activity by Defendants in their collection lawsuits in Alabama.

5.   The Plaintiff won the lawsuit.

## JURISDICTION

6.   Personal jurisdiction exists over Defendants as Defendants have the necessary minimum contacts with the State of Alabama and this suit arises out of Defendants' specific conduct with Plaintiff in Alabama.   All the actions described in this suit occurred in Alabama.

7.   Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

8.   Venue is proper as Defendants do business in this judicial district.

## PARTIES

9.   Plaintiff Katherine Enis a/k/a Kat Enis (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

10. Defendant Cavalry Portfolio Services, LLC, ("Defendant" or "Cavalry[1]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business outside of Alabama in Arizona or Nevada.

11. Defendant Cavalry SPV I, LLC, ("Defendant" or "Cavalry") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business outside of Alabama in Arizona or Nevada.

12. In this case, Defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC acted as agents for each other and all actions taken by one entity were taken on behalf of the other entity.

13. Defendant Cavalry Portfolio Services, LLC and Defendant Cavalry SPV I, LLC are hereinafter referred to collectively as "Cavalry."

14. Defendant Cavalry Portfolio Services, LLC, upon information and belief, allegedly buys defaulted consumer debt.

---

[1] "Cavalry Portfolio Services, LLC" or "Cavalry SPV I, LLC"  or "Defendant" or "Defendants" mean Cavalry directly or through its debt collectors, employees and agents, credit reported against Plaintiffs, or otherwise took any collection action against Plaintiffs.

15.     Defendant Cavalry Portfolio Services, LLC, assigns all collection activities for the defaulted debt to Cavalry SPV I, LLC.   This includes credit reporting.

16.     These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

## RECOGNITION BY CONGRESS OF THE
## WIDESPREAD ABUSE BY COLLECTORS

17.     Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

18.     Congress recognized that there are four social ills caused by abusive debt collection:   (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

19.     Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

20.     15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)     There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)     Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The Small Claims Court Complaint

21. On December 11, 2015, Defendant Cavalry sued Plaintiff in the Small Claims Court of Madison County, Alabama, with a case number of SM-2015-903600.

22. The Nadler & Associates, P.C. collection law firm, filed this suit.

23. In this suit, Defendant Cavalry asserted it was the owner of a certain debt allegedly owed by Plaintiff.

24. Defendant Cavalry alleged Plaintiff owed Cavalry $1,853.52.

25. Defendant Cavalry also claimed court costs.

26. The original creditor is listed as "GE Capital Retail Bank/Care Credit."

27. The suit has a warning to the Plaintiff Enis who was sued, that if Plaintiff Enis failed to respond, a judgment may be entered against Plaintiff Enis.

28.   Defendant Cavalry knows that Plaintiff has never done business with Defendant Cavalry.

29.   This lawsuit, and the other Alabama lawsuits filed by Cavalry every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Cavalry cannot and will not prove it has any right to collect on.

30.   Defendant Cavalry knew or should have known the statute of limitations had expired and the suit was improper.

31.   Even if, for the sake of argument, the debt was ever owed to "GE Capital Retail Bank/Care Credit" or even down the line to "Cavalry," it was owed more than three (3) years before suit was filed and it was also over six (6) years from the time suit was filed.

32.   The contract that created the alleged debt, a document never revealed inside or outside of court to Plaintiff by Cavalry, may hold that another State's laws control so the statute of limitation on a collection may very well be shorter than the time period allowed by Alabama.

33.   In any event, Cavalry knew what the statute of limitation was and decided to file and to continue to leave pending a lawsuit that was beyond the applicable statute of limitations.

34.   Another intention of Defendant Cavalry was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

35.   Defendant Cavalry knew Plaintiff did not owe the debt sued on.

36.   Defendant Cavalry made misrepresentations and false statements in the lawsuit (and by phone calls, letters and credit reporting) including that a debt was owed – Plaintiff owed none to Defendant Cavalry.

37.   Defendant Cavalry misrepresented the amount owed when Plaintiff owed Defendant Cavalry nothing on this account.

38.   Defendant Cavalry misrepresented the legal status of the debt as being owed when Plaintiff owed nothing to Cavalry.

39.   Defendant Cavalry misrepresented that Defendant Cavalry had standing and the right to bring the lawsuit when Defendant Cavalry did not have standing and did not have the right to bring the lawsuit and had no intention of proving its case.

40.   Defendant Cavalry did not own the debt at the time the lawsuit was filed but it misrepresented that it did own the debt.

41.   Defendant Cavalry did not own the debt at any time the lawsuit was pending but it misrepresented that it did own the debt.

42. This bogus collection suit against Plaintiff was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Cavalry in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers, including Plaintiff.

**Plaintiff Answers The Cavalry Lawsuit**

43. Plaintiff did not and does not owe the debt to Cavalry.

44. Plaintiff filed an Answer denying the allegations of Defendant Cavalry.

45. The Answer was filed on January 20, 2016, by Plaintiff.

46. Defendant Cavalry received a copy of this denial.

47. Defendant Cavalry understood that Plaintiff was refusing to pay on this debt.

48. Defendant Cavalry understood that Plaintiff disputed this debt.

49. Defendant Cavalry knew Plaintiff did not owe this debt.

50. Defendant Cavalry made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Cavalry knew that there was no merit to the case, no intention to prove, but Defendant Cavalry sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Cavalry.

51. The case was set for trial on April 20, 2016.

## Cavalry Loses The Collection Case

52. On April 21, 2016, District Court Judge Patricia Dunn Demos entered a judgment for Plaintiff Enis.

53. Defendant Cavalry offered no admissible evidence that Plaintiff owed Defendant Cavalry or that Defendant Cavalry owned the debt sued on.

54. This ended the case Defendant Cavalry filed against Plaintiff.

## Defendant Cavalry Falsely Credit Reports on Plaintiff's Credit

55. Credit reporting by Defendant Cavalry that Plaintiff owed this debt to Cavalry occurred before, during, and after the collection lawsuit.

56. Defendant Cavalry knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law as Defendant Cavalry knew that Plaintiff did not owe Defendant Cavalry any money on this debt, and certainly not the amount credit reported.

57. Defendant Cavalry knew that Defendant Cavalry did not own the debt being credit reported but yet it started and continued to credit report on this debt.

58. Cavalry knew this debt was disputed but refused to report this.

59. Even after losing, Defendant Cavalry still reported to the credit bureaus this account as being owed to Cavalry when Cavalry knew this was false.

60. The reason for the false credit reporting was to attempt to force the Plaintiff into paying a debt not owed as Cavalry understands that credit reporting is

one of the most powerful ways to force a consumer to pay a debt, even a debt that is not owed.

## Remaining Factual Allegations Against Defendant Cavalry

61.   Defendant Cavalry has collected against Plaintiff (by lawsuits, calls, letters, and credit reporting) when Plaintiff did not owe any money to Defendant Cavalry on this account, which violates the alleged agreement creating this debt as the agreement does not allow for collecting a non existent debt from anyone or a debt that is zero from anyone, including Plaintiff.

62.   Defendant Cavalry has misrepresented the debt to Plaintiff, including the amount of the debt, as none is owed.

63.   Defendant Cavalry has misrepresented the debt to Plaintiff, including the legal status of the debt, as none is owed.

64.   Defendant Cavalry has taken action it knows is illegal including suing on a debt it knew Plaintiff did not owe, suing after the statute of limitations has expired, proceeding to trial when Defendant Cavalry knew at the time and continues to know that it has no right to proceed to trial  (and no intent to prove) on a debt it does not own and that Plaintiff does not owe, and falsely credit reporting a debt that Plaintiff does not owe.

65.   Defendant Cavalry knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff

(and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Cavalry did not own the debt, the filing of a lawsuit after the statute of limitations has expired, by false credit reporting, by misrepresenting numerous facts in the lawsuit, and by all other wrongful acts described in this Complaint.

66. The alleged contract giving rise to the suit specifically does not allow Defendant Cavalry or anyone else to collect a debt not owed.

67. The debt being collected is a consumer debt as defined by the FDCPA.

68. Plaintiff is a "consumer" as defined by the FDCPA.

69. Defendant Cavalry is a "debt collector" as defined by the FDCPA as when it allegedly received the supposed debt owed by Plaintiff, the alleged debt was in default and the collecting of defaulted debt is a major part of the business of Defendant Cavalry.

70. Defendant Cavalry has been repeatedly sued in Alabama for filing suits with no basis to do so, thus showing Defendant Cavalry knows its conduct in the present case is wrong.

71. Defendant Cavalry has been repeatedly sued in Alabama for false credit reporting on debts not owed by Alabama consumers, thus showing Defendant Cavalry knows its conduct in the present case is wrong.

72.   Defendant Cavalry has full knowledge of what it is doing by filing bogus lawsuits, illegal credit reporting, and other illegal collection activities – it is a sophisticated debt collector (debt buyer) and the decisions outlined in this Complaint and that will be shown through discovery were not "rogue" or "outlier" decisions but instead represent a well thought out plan and scheme to take money from Alabama consumers (including Plaintiff) that Defendant Cavalry has no right to take under state law and under the FDCPA.

73.   Defendant Cavalry knows that it is suing Alabama consumers (including Plaintiff) who do not owe the debts being sued upon.

74.   Defendant Cavalry knows that it is suing Alabama consumers (including Plaintiff) on debts that Defendant Cavalry does not own which Defendant Cavalry knows is not allowed in Alabama.

75.   Defendant Cavalry is counting on the fact that many Alabama consumers (including Plaintiff) will not answer and so default judgments will be entered.

76.   This type of "scattershot" litigation strategy is improper, deceptive, and abusive as it is fundamentally unfair and deceptive to sue consumers (including Plaintiff) who do not owe the debt and it is also improper to sue when there is no intention of proving the lawsuit filed.

77.    Defendant Cavalry knows that its "scattershot litigation" is improper but it has decided that this is the most effective way (as opposed to only making collection calls, sending collection letters, and credit reporting) to obtain money from Alabama consumers who do not owe the money to Defendant Cavalry.

78.    The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

79.    It is a practice of the Defendant Cavalry to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

80.    All actions taken by employees, agents, servants, or representatives of any type for the Defendant Cavalry were taken in the line and scope of such individuals' employment, agency or representation.

81.    At no time has Defendant Cavalry told or implied to Plaintiff that any conduct by any agent or employee of Defendant Cavalry was outside the line and scope of such employment or agency.

82.    This includes collection counsel for Defendant Cavalry who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Cavalry.

83.    All actions taken by the Defendant Cavalry were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

84.    Defendant Cavalry has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Cavalry is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

85.    Defendant Cavalry is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

86.    At no time before the collection suit, during the collection suit, after the collection suit, or even up to the date this Complaint is filed, has Defendant Cavalry directly or indirectly, expressly or implicitly, apologized to the Plaintiff for the conduct described in this Complaint which demonstrates that the conduct described was not accidental or unintentional but instead was intentional.

## CAUSES OF ACTION

### COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692d

87.    Section 1692d states, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

88.    Defendant Cavalry violated Section 1692d by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

89.    The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT II.

### VIOLATIONS OF THE FAIR DEBT COLLECTIONPRACTICES ACT
### 15 U.S.C. § 1692e

90.    Section 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

91.    Defendant Cavalry violated Section 1692e by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

92.    The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT III.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e(2)

93.    Section 1692e(2) states, "The false representation of the character, amount, or legal status of any debt;"

94.    Defendant Cavalry violated Section 1692e(2) by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

95.    The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT IV.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(8)

96.    Section 1692e(8) states, "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

97.    Defendant Cavalry violated Section 1692e(8) by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

98.    The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT V.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10)

99.   Section 1692e(10) states, "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

100.   Defendant Cavalry violated Section 1692e(10) by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

101.   The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VI.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f

102.   Section 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

103.   Defendant Cavalry violated Section 1692f by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

104.   The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and

credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VII.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f(1)

105. Section 1692f(1) states, "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

106. Defendant Cavalry violated Section 1692f(1) by collecting this debt as alleged in this Complaint in paragraphs 2-5, 10-16, and 21-86.

107. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VIII.

## INVASION OF PRIVACY

108. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Cavalry violated Alabama state law as described in this Complaint in paragraphs 2-5, 10-16, and 21-86.

109.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

110.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

111.  Defendant Cavalry intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

112. Defendant Cavalry intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

113. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

114. The conduct of Defendant Cavalry, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Cavalry which occurred in a way that would be highly offensive to a reasonable person in that position.

115. This conduct includes the filing of a public lawsuit against Plaintiff.

116. A public lawsuit that has no merit and Defendant Cavalry knew at the time it filed the lawsuit that it had no merit.

117. Defendant Cavalry has continued to publicly state through credit reporting that Plaintiff owes the debt to Defendant Cavalry when Defendant Cavalry knows this is untrue.

118. All of the wrongful acts described in this Complaint (paragraphs 2-5, 10-16, and 21-86) demonstrate the wrongful scheme, plan, and design of Defendant Cavalry in its campaign of improper debt collection, which has led to the Plaintiff's privacy being invaded.

119. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

120. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Cavalry.

121. All acts of Defendant Cavalry were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Cavalry is subject to punitive damages.

## COUNT IX.

## NEGLIGENT HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

122. Defendant Cavalry 's collectors are allowed and encouraged to break state law in order to collect debts.

123. This includes all of the violations of the law described in this Complaint in paragraphs 2-5, 10-16, and 21-86.

124. Defendant Cavalry is aware of the wrongful conduct of its collectors.

125. Defendant Cavalry negligently hired, trained, retained or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Cavalry is thereby responsible to

the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

126. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow bogus lawsuit after bogus lawsuit (including the one against Plaintiff) to be filed, and to be filed after the time period to sue had expired, to be "prosecuted" (actually there was nothing done by Defendant Cavalry other than to hope Plaintiff would default or cave in to the lawsuit), for false credit reporting to happen before during and after the lawsuit, unless this was part of a plan to be negligent in allowing incompetent collectors to run wild and damage Plaintiff while Defendant Cavalry sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

127. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT X.

## WANTON HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

128. Defendant Cavalry's collectors are allowed and encouraged to break state law in order to collect debts.

129. This includes all of the violations of the law described in this Complaint in paragraphs 2-5, 10-16, and 21-86.

130. Defendant Cavalry is aware of the wrongful conduct of its collectors.

131. Defendant Cavalry wantonly hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Cavalry is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

132. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow bogus lawsuit after bogus lawsuit (including the one against Plaintiff) to be filed, and to be filed after the time period to sue had expired, to be "prosecuted" (actually there was nothing done by Defendant Cavalry other than to hope Plaintiff would default or cave in to the lawsuit),

for false credit reporting to happen before during and after the lawsuit, unless this was part of a well orchestrated design and plan of wantonly allowing incompetent collectors to run wild and damage Plaintiff while Defendant Cavalry sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

133. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XI.

### INTENTIONAL HIRING, TRAINING, AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

134. Defendant Cavalry's collectors are allowed and encouraged to break state law in order to collect debts.

135. This includes all of the violations of the law described in this Complaint in paragraphs 2-5, 10-16, and 21-86.

136. Defendant Cavalry is aware of the wrongful conduct of its collectors.

137. Defendant Cavalry intentionally hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Cavalry is thereby responsible to

the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

138. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow bogus lawsuit after bogus lawsuit (including the one against Plaintiff) to be filed, and to be filed after the time period to sue had expired, to be "prosecuted" (actually there was nothing done by Defendant Cavalry other than to hope Plaintiff would default or cave in to the lawsuit), for false credit reporting to happen before during and after the lawsuit, unless this was part of an intentional well orchestrated design and plan of allowing incompetent collectors to run wild and damage Plaintiff while Defendant Cavalry sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

139. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XII.

## WANTON CONDUCT

140.  Defendant Cavalry had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

141.  Defendant Cavalry had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

142.  Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint in paragraphs 2-5, 10-16, and 21-86.

143.  Defendant Cavalry violated all of the duties Defendant Cavalry had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

144.  It was foreseeable, and Defendant Cavalry did in fact foresee it, the each and every action of Defendant Cavalry (filing a bogus lawsuit, filing after the statute of limitations had expired, and the other illegal collection activities) would lead and did lead to the exact type of harm suffered by Plaintiff.

145.  The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XIII.

## MALICIOUS PROSECUTION AGAINST DEFENDANT CAVALRY

146. Defendant Cavalry instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so as Plaintiff did not owe Defendant Cavalry the debt sued upon.

147. Defendant Cavalry continued to prosecute the case with no reasonable basis to do so as Plaintiff did not owe Defendant Cavalry the debt sued upon.

148. Defendant Cavalry filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.  While this failed, the attempt by Defendant Cavalry shows the malice against Plaintiff.

149. Defendant Cavalry instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Cavalry money on a non-existent debt.

150. The malicious plan of Defendant Cavalry included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Cavalry tried to accomplish this by the Defendant Cavalry's malicious and abusive actions.

151. Throughout the entire illegal lawsuit against Plaintiff, Defendant Cavalry knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Cavalry knew it was not entitled to receive.

152. The litigation against Plaintiff filed by Defendant Cavalry eventually resulted in adjudication in favor of Plaintiff on April 21, 2016.

153. The illegal and improper actions of the Defendant Cavalry constitutes malicious prosecution and this cause of action is supported by paragraphs 2-5, 10-16, and 21-86 of the Complaint.

154. This is the pattern and practice of Defendant Cavalry – to file suits with no basis in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Cavalry.

155. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

_____
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

_____
**Attorney for Plaintiff**

**Serve defendants via certified mail at the following addresses:**

Cavalry Portfolio Services, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

Cavalry SPV I, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104